```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE
                      NASHVILLE DIVISION
```

CHARLES S. DENNEY, and wife    )
TERRI ANNE DENNEY,             )
                               )
    Plaintiffs,              )
                               )
v.                             )
                               )
FORENSIC ANALYSIS              )
ENGINEERING CORPORATION,       )
                               ) No. 3:06-0136
    Defendant/               ) JUDGE ECHOLS
    Third Party Plaintiff,   )
                               )
v.                             )
                               )
MATERIALS ANALYTICAL           )
SERVICES, INC.,                )
                               )
    Third Party Defendant.   )

## MEMORANDUM

Pending before the Court are three motions: Third-Party Defendant's Motion to Dismiss (Docket Entry No. 12), Plaintiffs' Rule 21 Motion and Memorandum to Sever FAEC's Third Party Claim Against MAS (Docket Entry No. 14), and Plaintiffs' Rule 12(f) Motion and Memorandum to Strike FAEC's Third Defense Blaming Thomas Boyers (Docket Entry No. 19), to which the parties have responded in opposition.

### I. FACTS

Plaintiffs Steve and Terri Anne Denney are Tennessee citizens. Steve Denney received a spinal implant. In 2000 Sulzer Medica,

1

Ltd., now doing business as Centerpulse, announced a recall of the Sulzer Pedicle Screw System due to a defect "related to a reaction of the body to a slight residue of lubricant used in the manufacturing process."  (Docket Entry No. 1, Complaint ¶¶ 1, 9-10.)  After doctors removed Mr. Denney's Sulzer Pedicle Screw System implant on October 14, 2003, subsequent testing revealed that hydrocarbon lubricant contaminated his implant and was harmful to his body.  (Id. at ¶ 11.)  The Denneys, represented by Thomas Boyers V, filed a product liability lawsuit against Zimmer, Centerpulse, and Centerpulse US.  (Id. at ¶ 14.)

During the litigation, Boyers sent the allegedly defective implant to Plaintiffs' expert, Forensic Analysis Engineering Corporation ("FAEC"), for testing.  (Id. at ¶ 26.)  FAEC is a North Carolina corporation with its principal place of business in Raleigh.  FAEC does business in Middle Tennessee.  (Id. at ¶ 2.)  Plaintiffs allege that FAEC failed to preserve the chain of custody of the implant and as a result, the product liability defendants did not have an opportunity to test the implant.  The Denneys' lawsuit was dismissed with prejudice.  After the suit was dismissed, the implant was located.  Plaintiffs allege FAEC is liable for breach of contract and negligent spoliation of evidence.  (Id. at ¶ 26-32.)

FAEC denied liability and filed a Third-Party Complaint for indemnity against Materials Analytical Services, Inc. ("MAS"), a

2

Georgia corporation with its principle place of business in Suwanee, Georgia. FAEC alleges that, after receiving the Denney implant from attorney Boyers, FAEC hired MAS to conduct the testing and delivered the implant to MAS. (Docket Entry No. 6, Third Party Complaint ¶ 2, 4-7.) MAS then performed the necessary testing and on January 30, 2004, provided FAEC with a report of its findings. FAEC provided the report to Boyers. (Id. at ¶ 8.)

In December 2004, Boyers asked FAEC to send the implant to an address in Indianapolis, Indiana, for testing by the defendants in the Denneys' product liability suit. FAEC contacted MAS and requested that MAS send the implant to FAEC so that it could be forwarded to Indiana. (Id. at ¶ 9.) MAS informed FAEC the implant had been misplaced and could not be located. FAEC passed this information on to Boyers. (Id. at ¶ 10.) MAS eventually located the implant, but not before the Denneys' suit was dismissed. (Id. at ¶ 11.)

William E. Longo, MAS' President, attests that the company's main office is in Georgia and MAS maintains smaller offices in North Carolina, California, Maryland, and Arizona, where it is authorized to conduct business. (Docket Entry No. 13, Longo Aff. ¶ 2-3.) In October 2003, FAEC asked MAS to conduct testing on certain spinal implant samples. The samples were to be washed/sonicated sequentially in solvents of different polarity. These solvent extractions, along with controlled solvents, were to

3

be dried down in order for MAS' Georgia lab to perform Fourier transform infrared analysis. (Id. at ¶¶ 4-5 & Ex. B.) The analysis was to be qualitative and the intent was to identify any organic material on (or in the porosity) of the parts. (Id. at ¶ 6.) FAEC paid MAS to conduct these tests, and the results were transmitted from MAS in Georgia to FAEC in North Carolina. (Id. at ¶ 7.) MAS would have conducted a quantitative analysis of any contaminants if FAEC had requested it. (Id. at ¶ 8.) Although MAS kept the surgical screw samples tested, its representatives were not told to retain the extracted liquids. All of the screws went through the solvent extraction process according to FAEC's instructions, and the testing process could not have been duplicated. Upon completion of the tests, there was no possibility for further extraction of the alleged machine oil. Any further testing or extraction process would have revealed only a clean surface and thus, additional extraction analysis would have been useless. (Id. at ¶ 9.)

MAS' work authorization sheet for the specimens was sent from MAS' Georgia office to FAEC's North Carolina office. (Id. at ¶ 10.) All analysis was done in Georgia, and all communications regarding the tests were made to and from Georgia and North Carolina. (Id. at ¶ 11.) No MAS representatives had any contact with any party or person in Tennessee, including the Denneys and their attorney. (Id. at ¶ 12.) MAS did not agree to conduct any

4

business or perform any tasks in Tennessee for FAEC or any other person or party related to this suit. (Id. at ¶ 13.) MAS was not hired as an expert to testify for any person or party in Tennessee concerning this case, and MAS did not anticipate being asked to testify in Tennessee. (Id. at ¶ 14.)

MAS has no offices, employees, or representatives in Tennessee. MAS does not target advertisements to Tennessee and MAS representatives do not travel to Tennessee to solicit business. MAS does not regularly or systematically conduct business in Tennessee. (Id. at ¶¶ 15-18.)

MAS now moves to dismiss the Third-Party Complaint for lack of personal jurisdiction because it does not have any ties to the State of Tennessee. FAEC opposes the motion on the ground that the Court should permit FAEC to conduct discovery to determine whether there is a factual basis for personal jurisdiction over MAS. FAEC alleges that Longo was not FAEC's contact at MAS and Longo did not perform the testing. FAEC further alleges that a former MAS employee, Garth Freeman, prepared the Work Authorization Sheet sent from MAS to FAEC, and Freeman conducted the verbal communications with FAEC. Thus, FAEC seeks to depose Longo and Freeman to determine whether the statements in Longo's affidavit are correct and to search for additional facts in support of general or specific jurisdiction over MAS in Tennessee. FAEC provides a copy of MAS' website and points out that MAS advertises its services on

5

the internet and claims to "serve clients throughout the world." (Docket Entry No. 15, Ex. A; Docket Entry No. 17, Orr Aff.)

## II. **STANDARD OF REVIEW**

The burden to establish the jurisdiction of the Court is on the Plaintiff, in this case FAEC. See Third Nat'l Bank v. Wedge Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989); Inter-City Prod. Corp. v. Willey, 149 F.R.D. 563, 570 (M.D. Tenn. 1993); Chenault v. Walker, 36 S.W.3d 45, 56 (Tenn. 2001). In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court need not hold an evidentiary hearing, but may rely solely on the pleadings, affidavits, and other written submissions of the parties. See Third Nat'l Bank, 882 F.2d at 1089. If the Court proceeds in that manner, the burden on the Plaintiff is relatively slight, as the Plaintiff must make only a prima facie showing of jurisdiction. See id. The Court must consider the facts in the light most favorable to the Plaintiff. See id.

## III. **ANALYSIS**

In a diversity action like this one, the Court determines whether it may exercise personal jurisdiction over a non-resident defendant by applying the law of the state in which the federal court sits. See Third Nat'l Bank, 882 F.2d at 1089; Willey, 149 F.R.D. at 571. The Tennessee long-arm statute provides, in relevant part, that in order for a person or a corporation to be subject to jurisdiction within Tennessee the action or claim must

6

arise from the "transaction of any business within the state[,]" "[a]ny tortious act or omission within this state[,]" "[e]ntering into a contract for services to be rendered or for materials to be furnished in this state[,]" or "[a]ny basis not inconsistent with the constitution of this state or of the United States[.]"  Tenn. Code Ann. § 20-2-214(a)(1), (2), (5) & (6).  Tennessee courts exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment.  Bridgeport Music, Inc. v. Still N The Water Publishing, 327 F.3d 472, 477 (6th Cir. 2003); Third Nat'l Bank, 882 F.2d at 1089; Chenault, 36 S.W.3d at 52-53; United Agric. Serv., Inc. v. Scherer, 17 S.W.3d 252, 256 (Tenn. Ct. App. 2000); Shelby Mut. Ins. Co. v. Moore, 645 S.W.2d 242, 245 (Tenn. Ct. App. 1981).

The Plaintiff must show that the Defendant had sufficient minimum contacts with the forum such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003).  "Minimum contacts" exist when the Defendant's conduct and connection with the forum state are such that the Defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The Defendant must purposefully avail itself of the privilege of conducting activities within the forum state and thereby invoke the

7

benefits and protections of the state's laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). This ensures that a Defendant will not be haled into a particular forum on the basis of "random," "fortuitous," or "attenuated" activity, or by the unilateral activity of some other party or person. Id.; Youn, 324 F.3d at 417.

The Sixth Circuit has set forth a three-part test for determining whether personal jurisdiction may be exercised consistent with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968). Noting that the Mohasco test became too restrictive when the Tennessee long-arm statute was amended in 1972, the Tennessee courts consider three primary factors in determining whether the requisite minimum contacts exist: the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. Masada Inv. Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn. 1985); Scherer, 17 S.W.3d at 257; Moore, 645 S.W.2d at 246. Two lesser factors to be considered are the interest of the forum state and convenience. Allen, 697 S.W.2d at 334; Scherer, 17 S.W.3d at 257.

Furthermore, the courts distinguish between "general" jurisdiction and "specific" jurisdiction. Burger King Corp., 471 U.S. at 472, 473 n.15; Chenault, 36 S.W.3d at 52-53; Gregurek v. Swope Motors, Inc., 138 S.W.3d 882, 884-885 (Tenn. Ct. App. 2004); Scherer, 17 S.W.3d at 256. General jurisdiction may be exercised over a nonresident defendant in a suit that "does not arise out of or relate to the contacts with the forum state but rather the defendant's contacts with the forum state are so 'continuous and systematic' that jurisdiction is proper." Gregurek, 138 S.W.3d at 885; Youn, 324 F.3d at 418. "Specific jurisdiction is exercised over a defendant in a suit that directly arises out of or relates to one or more contacts that the defendant has with the forum." Gregurek, 138 S.W.3d at 885; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984); Youn, 324 F.3d at 418.

*1. General jurisdiction*

Plaintiff does not present facts showing that MAS' contacts with Tennessee are so continuous and systematic that general jurisdiction is proper. Thus, the Court concludes that it may not exercise general jurisdiction over MAS.

*2. Specific jurisdiction*

The Court concludes further that FAEC has not made even a *prima facie* showing of specific jurisdiction over MAS. FAEC has not presented any jurisdictional facts indicating that MAS purposefully availed itself of the privilege of acting in Tennessee

9

or of causing a consequence here.  See Intera Corp. v. Henderson, 428 F.3d 605, 616-617 (6th Cir. 2005).  The record before the Court does not include any facts showing that this lawsuit arose from MAS' own actions or communications with persons in Tennessee.  See id.; Mohasco Indus., Inc., 401 F.2d at 381.  Tennessee's long arm statute permits the exercise of personal jurisdiction over a defendant when he undertakes, through an agent or personal representative, any of the actions specified in the statute.  Tenn. Code Ann. § 20-2-214(c).  But FAEC does not even contend that it acted as MAS' agent or personal representative when it communicated with Boyers in Tennessee.

Further, FAEC has not produced any evidence that MAS' contacts with Tennessee were such that the operative facts of the instant controversy arose out of MAS' contacts with Tennessee.  See Intera Corp., 428 F.3d at 617-618.  Without some proof that MAS itself engaged in minimum contacts with Tennessee, it would be unreasonable to exercise personal jurisdiction over MAS in this case.  See id. at 618.  Tennessee has a strong interest in the litigation between the Denneys and FAEC, because the Denneys are Tennessee residents, but Tennessee does not have as compelling an interest in exercising jurisdiction over the indemnity dispute between FAEC and MAS, which can be resolved in another court.

FAEC alleges simply that jurisdiction exists, without asserting any factual basis for the exercise of jurisdiction, and

10

requests discovery in an effort to try to make its jurisdictional case. While the Court has discretion to permit discovery on the issue of personal jurisdiction, Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991), FAEC does not give the Court any reason to believe that discovery will reveal any facts to establish that MAS had sufficient minimum contacts with Tennessee to warrant the exercise of personal jurisdiction over it in this case. Therefore, MAS' motion to dismiss will be granted, and MAS will be dismissed from the suit without prejudice.

Because the Court dismisses MAS from the suit, the Court will deny as moot Plaintiffs' Rule 21 Motion and Memorandum to Sever FAEC's Third Party Claim Against MAS (Docket Entry No. 14).

Finally, Plaintiffs ask the Court to strike FAEC's third defense to the extent FAEC alleges that Plaintiffs' attorney, Thomas Boyers, committed legal malpractice in the product liability case and is comparatively at fault for Plaintiffs' alleged damages. Plaintiffs complain that FAEC does not allege it has an expert to testify to Boyers' malpractice in accordance with Tennessee law and Boyers should not be deposed or held hostage as a material witness while this case is proceeding.

11

FAEC's theory is that Boyers filed a one-sentence response[1] to the defendants' motion for summary judgment in the product liability case, and such response was the proximate cause of the loss of Plaintiffs' case, not the misplacement of the implant.

Motions to strike affirmative defenses under Federal Rule of Civil Procedure 12(f) are generally disfavored, but are within the sound discretion of the district court. <u>Federal Sav. & Loan Ins. Corp. v. Burdette</u>, 696 F. Supp. 1183, 1186 (E.D. Tenn. 1988). A court may strike an affirmative defense that is insufficient, redundant, immaterial, impertinent, or scandalous. <u>Id.</u>

It seems obvious that Boyers must have communicated in writing or verbally or both with one or more representatives of FAEC when Boyers sent the implant to FAEC for testing and later when he requested its transfer to Indiana. FAEC represents that it provided Boyers with a copy of MAS' report of the test results. Boyers may well possess material knowledge which FAEC is entitled to explore in light of the defenses it has raised. The Court will

---

[1]According to FAEC, the response read:

> The plaintiffs, Charles S. and Terri Anne Denney, pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully respond that in light of the duties imposed by Rule 11 of the Federal Rules of Civil Procedure, they are without opposition to the defendant's Motion for Summary Judgment.

After the implant was found, Plaintiffs filed a Rule 60(b) motion seeking relief from judgment in their product liability case, and that motion is pending. <u>Denney v. Zimmer US</u>, No. 3:04-0923 (M.D. Tenn.).

12

not presently strike FAEC's third defense because Plaintiffs have not shown that it is insufficient, redundant, immaterial, impertinent, or scandalous. See Burdette, 696 F. Supp. at 1186. The parties may present to the Magistrate Judge for consideration and ruling any concerns the defense may raise in the litigation of the case.

### III. CONCLUSION

MAS' motion to dismiss for lack of personal jurisdiction will be granted and MAS will be dismissed from the suit without prejudice. Plaintiffs' Rule 21 Motion and Memorandum to Sever FAEC's Third Party Claim Against MAS (Docket Entry No. 14) will be denied as moot. Plaintiffs' Rule 12(f) Motion and Memorandum to Strike FAEC's Third Defense Blaming Thomas Boyers (Docket Entry No. 19) will be DENIED.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE